Good morning. I'm Matthew Hoppeck on behalf of Chantelle Robert. This is a deportation case that springs from a somewhat bizarre criminal conviction. 18 U.S.A. 1028a is a sense and change the effect of sentences for certain fraud crimes. In every case I've ever found, and you've read several hundred cases reciting this brief, the person is convicted of both the underlined fraud offense and 1028a, which is aggravated identity theft. The statute adds a 24-month penalty. It says the penalties can't run concurrently. It has a host of sort of permanent limits on sentencing. What you have here is a conviction under 1028a where the respondent or the petitioner was not convicted of the underlying felony, and that affects whether she can be deported for it. I want to open with a discussion of the loss amount because that's the first thing the government had to prove to prove her deportable under the aggravated felony statute. The way the immigration statute works, a permanent resident of the United States has to be proven removable by clear and convincing evidence, and in Nijewan v. Holder, the Supreme Court addressed this aggravated felony statute for a fraud offense where the loss exceeds $10,000. The government has to prove by clear and convincing evidence that the loss was more than $10,000, although it can use what's now called a circumstance-specific approach. Here, Ms. Roberts was charged in a 37-count indictment with multiple different counts of wire fraud, conspiracy to commit wire fraud, and aggravated identity theft. But she only pleaded guilty to one count, and in the indictment, that count lists the loss amount as $1,003. It lists the victim as a person named J.R. and that the single transaction she pleaded guilty to is occurring on June 15, 2017. After pleading guilty, she moved on to sentencing, where a sentencing judge is allowed to consider non-convicted conduct, allowed to consider not-charged conduct, allowed to consider conduct outside of the national limitations in deciding the sentencing and restitution amount. So in sentencing, Chantel, as well as her mother, Ludina, were both ordered to pay their state of California back a little over $400,000. The problem the government has is that they won't have any proof that the restitution amount was the actual loss amount. What about the plea agreement? She stipulated to that amount in the plea agreement. It's important to compare her plea agreement to her mother's plea agreement. She stipulated that she could be held to pay restitution for that amount, but she didn't stipulate that her conduct had caused that loss. If you compare that to her mom's plea agreement, which is at page 19 of the record, her mom's plea agreement specifies that her conduct caused that loss. It also says that she would get a 12-point sentencing enhancement for a loss over $250,000. In Chantel's plea agreement, she didn't stipulate to a 12-point sentencing enhancement, and she didn't get one for a loss exceeding $250,000. We read those two plea agreements, which were negotiated by the same AUSA at the same time before the same judge, in concert. That's where I think we differ from the board. The BIA, in its decision, never mentioned Glaudina's plea agreement or the difference between the two. In our view, that was an error by the agency, where Glaudina's plea agreement says, at page 19, that the $475,000 loss was tied to her conduct. In the same section of Chantel's plea agreement, there isn't any admission that the loss was tied to her conduct. And that's okay for us. She does say in her plea agreement, she does say, defendant aided and abetted in defrauding the CEDD of $475,000. So she admits she aided and abetted. Now, I understand there's a real fighting issue here about the fact she wasn't either charged or convicted of aiding and abetting, but she did stipulate to that. So why hasn't that at least reached the bar of clear and convincing evidence that the loss is $475,000? Well, the first answer is that you've hit the nail on the head. She wasn't convicted of aiding and abetting. So uncharged conduct, she could also admit in her plea agreement to having done a host of other things. Uncharged conduct and unconvicted conduct can't be part of the court's determination. That's what the Nijuan decision and this court's decision, Tian, said that the loss amount has to be tied to charged and convicted conduct. So if in her plea agreement, she also admits that she defrauded 50 other people not charged in the indictment and not convicted, the court can consider that for sentencing. And it did. That's well within the court's rules. But it doesn't meet the standard that Nijuan requires and that this court and Tian required that the loss amount has to be tied to actually charged and convicted conduct. Counsel, what authority do we look to to tell us what tied to means? Well, I think I don't know that this court has explained it. The court used those words in the Tian decision. But I think it's a natural, you know, the criminal cases have the same constituent parts. They have an indictment, recitation of facts. They have a plea agreement and they have a sentencing record. The sentencing record is broader than than the indictment or the plea agreement because the court can consider more at sentencing than it can. It can also consider those things under a lower burden of proof, which is a separate argument for why the government didn't meet its burden here. But I don't have a good definition for you. I think when the Supreme Court said tied to in Nijuan, I think it was talking about conduct that is directly, that springs directly from what is in the indictment, the facts alleged that she pleaded to. When a federal defendant is negotiating a plea agreement with the Department of Justice, what they have before them is the indictment, the facts alleged in the indictment. And in this case, she got a very favorable plea where she all but one count got dismissed. It feels a bit like the rug being pulled out from under you when you get a plea agreement with just one count with a loss amount of $1,007 and then the same Department of Justice turns around and tries to deport you for every count in the indictment and the entire loss alleged. Well, let me ask you this about the plea agreement, kind of follow up on what you just said about the rug being pulled out from under her. She also acknowledges in the plea agreement that it is virtually certain she will be deported. We see this in plea agreements all the time, though. And I think it's true that it's a deployment. It shouldn't have come as any great surprise to her because she acknowledged in the plea agreement that under federal law, she will be put into removal proceedings. And as it says here, it is virtually certain she'll be deported. So you can't really argue it's a surprise. Yeah, I think that's fair. But also after the Supreme Court's Padilla decision, we see this in almost every plea agreement, that any immigrant has to say in their plea agreement that they've been advised it's possible they'll be deported. It is a bit of a surprise, though, that she admits to one violation for $1,007 and then the same Department of Justice turns around and says her conviction caused a loss of $475,000. I would also note the lower burden of proof. This is an issue where I'm not certain the Department of Justice disagrees with us because they waived this issue in their brief. At sentencing, when the court ordered this lower restitution amount, the court was allowed to consider the facts at sentencing under preponderance of evidence. But to prove the loss amount in removal proceedings, the Department of Justice had to prove by clear and convincing evidence. And that lower burden of proof makes a real significant difference. The Third Circuit's decision in RAD v. Attorney General 2020 talks about that different standard of proof and that the board itself, the BIA itself, has said that the agency at least has to consider it. There's a BIA decision called Babaisikov, or Matter of Babaisikov, that was discussed in the Nijuan case where the agency says that it at least has to consider the lower burden of proof at sentencing in figuring out the loss amount because sometimes sentencing judges are allowed to consider a broader swath of conduct than what was charged or convicted. This is an argument that's waived by the Department of Justice in its brief. It doesn't mention the preponderance of evidence standard. And so we don't know whether the government agrees or disagrees. It's also not mentioned by the board in its decision, although Babaisikov says the board is supposed to. There's an argument by the Attorney General I would like to address about loss amount that has to do with the Mandatory Victims Restitution Act. The Attorney General argues that any restitution amount ordered in a federal criminal case has to be the actual loss, that it's impossible that you could be ordered to pay restitution for conduct beyond the actual loss. That argument just isn't true, and this court has repeatedly endorsed restitution amounts that encompass more than the convicted conduct. There's a decision out of this court, a court called Bush, States v. Bush in 2001, where the court endorsed the district court ordering restitution for conduct that was outside the statute of limitations. The court said that was okay because the district court in sentencing can consider uncharged conduct. The court said the same thing in the Manzer case and the Ross case. These are listed in our reply brief. So I think, you know, without getting deeper into the 1990 overruling of a portion of the definition of victim in the Mandatory Victims Restitution Act, the simple point is that district courts all the time order restitution amounts greater than the proven loss at trial. Those are our arguments on the loss amount. At a minimum, we don't believe the Department of Justice proved by clear and convincing evidence that the loss amount was $475,000. We also think the agency erred by skipping over factors it's required to consider, like the lower burden of proof mentioned in Bevisikov. And it erred by missing the differences between Glowina's plea agreement and Chantel's plea agreement, which admit to different things. Those were filed with the board. They were briefed with the board, but the board didn't mention them. Mr. Hoppe, you are into your rebuttal time. You can proceed or you can reserve your time. I think I'll reserve. Thank you. All right. Mr. Shuchard. Thank you, Your Honor. Can I ask that the camera be zoomed out just a bit so that I can see the clock? I'm only seeing it in reverse in reflection on the bench there. I'm sorry. I don't have control of the camera where it's sitting. Okay. Fair enough. I will just make do. I will use my eyeballs here. Thank you, Your Honors. I'm Spencer Shuchard for the Attorney General. May it please the court. This case is about fraud, about whether the petitioner committed fraud. That's the divisibility piece. How much fraud. That's our aggregate loss piece. And how serious was the fraud. That's our particularly serious crime piece. With respect to the divisibility piece, I'm prepared to rest on the brief. It's our position the court has already held that a conviction under 1028A is divisible as to the predicate felony. Other courts of appeals have found the same thing. The agency's decision is consistent with those opinions. And I can just move on to the amount of loss, the aggregate loss. Now, the loss here had to amount to greater than $10,000. To establish that, the immigration judge had to look at or had to use the circumstance-specific approach. The standard for that comes from Nijuan, the Supreme Court case, which is whether we can tether greater than $10,000 in losses to the conviction. And the answer here is yes. The petitioner's approach of looking at the single line item at count 31 is far too narrow. That count doesn't define the loss. It's describing the transaction. Remember, this is the circumstance-specific approach. We're not talking about elements. This is not categorical. So we're not limited to just what that transaction says. And the court recognized that, I think, in Sokpa Anku v. Lynch. In that case, the petitioner was charged with three counts of fraud. This case is in my brief. None of those were charged at an amount greater than $10,000. But the sentencing judge imposed restitution at an amount above $10,000 on each count. And the court held that each count separately and in aggregate was tied to the amount of loss. So that was not tied. But in that case, the petitioner was convicted on all three counts. How do we get around what I would say is sort of the plain language from Nijihwan, which says, the loss must be tied to the specific counts covered by the conviction. In this case, there's only one count covered by the conviction. And it cannot be based on dismissed counts. Okay. I just want to push back a little bit on Sokpa Anku. There was a single conviction of three counts. The court did make that point in Sokpa Anku. But Nijihwan is actually very favorable for us here. Because in that case, the jury found that the petitioner there was guilty of wire fraud, among other things. But the jury didn't make a finding as to loss. It wasn't required to make a finding as to loss, which is also true here. So any transaction amount listed in Nijihwan's indictment, just like in Ms. Roberts' indictment, doesn't matter. It could say anything. It's just describing conduct. It's not telling us what the universe of the loss is. If we adopt your position, will we be in conflict with the Third Circuit in their Allaka case? It seems to me that this is very close to what the Third Circuit dealt with in Allaka. It is similar to Allaka. But keep in mind, there is the Third Circuit case Doe, which is more current. That is 659 F3rd 266. I did brief this. In that case, there was a single transaction at a single count that was less than $10,000. But because he was held personally responsible for $47,000, I think it was, in losses, under the circumstance-specific approach, based on the language aiding and abetting a scheme, the amount was held to be tethered to the conviction, and it was greater than $10,000. But, counsel, it's my understanding that in Doe, he pled guilty to aiding and abetting the entire scheme. That's not what we have here. We don't have that in terms of the elements of what her conviction was, but, again, we're not doing the categorical approach here. What we have is the circumstances of the conduct surrounding the conviction. And here, in her indictment, just the language at count 31 doesn't describe a crime at all. It's a date, a victim, and an amount. In order to understand what that crime is, you have to look at the prefatory language, as the board understood, just above count 20. That describes aggravated identity theft. And then that included, by reference, the language from counts 2 to 19, which was wire fraud and bad, included the language from count 1, which is the aiding and abetting. Well, let me ask you this. There seems to be cases that say if there's multiple counts, you can aggregate the multiple counts, assuming there's a conviction on multiple counts. There are cases that say if it's a conspiracy, you can look to the whole conspiracy. And there are cases that say if you are convicted of aiding and abetting, you can look to the amount of the total loss that you aided and abetted. Now, is there a case that's on all fours with our situation, where there's no aiding and abetting, there's no conspiracy, one count of less than $10,000, but the overall aggregate loss amount for all the counts that are dismissed is over $10,000? Not as such, Your Honor. But I still think that Nijuan is the case that gets us there. Because, again, there is no loss to aggregate in the indictment there. There's nothing at all. The jury found nothing. There was nothing charged. The way that they got to the loss was through the petitioner's stipulation in his plea agreement. That's exactly what we have here. That plus the sentencing judge's follow-on restitution order. And that's all we need, really, to get us to the total amount. Remember, this is fact-specific, and the facts for her are quite bad. She admits, as he pointed out, to aiding and abetting the entire scheme for a total loss of $475,000. That's on page 617. On page 618, she agrees to pay restitution equal to the offense charged, caused to any victim, offense singular. On page 623, she agrees to forfeit her right to challenge or to argue in any court or direct on collateral attack that her admitted conduct fall outside the statute of conviction, conviction singular. On page 598, where the offense is listed, it says offense date end is October of 2017, but the date of the transaction that she's charged for is in June of 17. All this tells us that what we're looking at is the scheme, her conduct here, the circumstances is the scheme. That's not what she was convicted of, per se, of the elements, but we're not limited to the elements here. Leaving that aside, even if you have misgivings about being all fours on the case law or the differential burdens of proof, which we don't agree, but even if you don't, remember the immigration judge didn't need any of that because the petitioner admitted to this loss. Yes, she admitted in the plea agreement, but she admitted it in open court under oath before the immigration judge. That was all he needed. To paraphrase Nijewan here, it's not unfair to hold a petitioner to her word about the amount of loss she caused in her fraud scheme. Although a petitioner accuses the Department of Justice of a little bit of duplicity here in charging her on removal, it's a bit too precious, I think, to allow a defendant to go into criminal court, federal court, and make an agreement where she says, I admit to all of this conduct, this whole entire fraud scheme that I did with my mother, and then turn around in immigration court in exchange for pleading to just one count, and then turn around in immigration court and say, I only pled to one count, so I didn't admit to all that conduct. It's an understandable game that she's playing, but the agency, the case law, the statutes, none of that requires the agency to play along, as I think I've argued. How do we get – what does Nijewan mean, however, when it says you can't consider dismissed counts? Because that's what we're doing is considering dismissed counts here, aren't we? I don't think that we are because, again, I don't think the transaction amounts matter. I think that's simply describing the conduct that led to those counts. Because, I mean, if you look, if you add up all of the charged transactions, it doesn't amount to $475,000. It's around 30 grand because that's what they had enough to charge in terms of the elements. But even if you do take all those out, even if we say, well, forget about the $30,000 from the other counts that she was charged with, she's still not below $10,000. She's 475 minus 30, whatever that is, because this isn't a loss that she's admitted to. This was the scheme that she and her mother cooked up. Counsel, isn't there a difference between considering statements and plea agreements for sentencing on the one hand and what we have here, though, is a statutory definition of aggravated felony? In terms of the burdens of proof, you mean, Your Honor? Yes, and just in terms of the case law and what's allowed. I mean, we're really looking at interpreting a statute here. Sure. Yes, and that's true. And I think, I mean, this is not something that the court has come away with. I cited to Suk Bahanku. Tian was a similar case as well, although, again, nothing is on all fours. But the aggravated felony burden of proof on the Department of Homeland Security is clear and convincing. The sentencing agreement is not beyond a reasonable doubt, so there is a burden of proof mismatch there. But this is what we're doing in terms of the loss calculation. It is a matter of statutory interpretation. I'm thinking through your question in my head as I'm speaking here, which is probably not the best tactic. But I think you're right. In that case, you could defer to the agency's interpretation here because the language is fairly ambiguous, as we don't actually have a standard of review that's been articulated in most cases. Could I ask one of you to tell me how much time is remaining? 4 minutes and 36 seconds. If there are no further questions on the loss calculation, I'm going to move on to the question of the particularly serious crime. Our position here is that because the petitioner is an aggravated felon, the agency's determination that her fraud was serious is outside the scope of review. That's under 1252A2C. That's a criminal alien bar. There is, of course, an exception for colorable legal challenges. But the petitioner hasn't brought one. She is arguing that the agency applied the wrong standard of review or applied the wrong standard, which is a legal challenge. But, again, it's not colorable. So under a matter of NAM, the agency has to first make a threshold determination of whether the elements of a crime fall within the ambit of a particularly serious one, and then it has to examine the factors, the type of sentence, and the nature and circumstances of the crime. This is a fairly low bar that we have from Gutierrez Vargas v. Garland, which is in my brief. And here the IJ correctly identified the elements. He determined that the petitioner's underlying predicate felony was wire fraud, and he said this. This crime could support a substantial amount of criminal activity with the potential of causing great financial harm to many people. That's at page 115. Two things about that statement. Number one, clearly the immigration judge made that threshold ambit finding. And number two, contrary to the petitioner's argument, he was clearly cognizant that this was a crime against property and not persons. And, again, it doesn't actually matter. There's no rule against finding property crimes to be particularly serious. That was the case in Gutierrez Vargas. That was not a crime against a person. And then the immigration judge moved on to examine the depth of the petitioner's involvement in the crime and the breadth of the scheme and the overall loss. And under Gutierrez Vargas, that is all the immigration judge was required to do. It's a fairly low bar, as I said. The immigration judge just has to note the elements of the offense, the petitioner's role in the crime, the sentence, which the restitution order was part of the sentence, and then the court's characterization of the crime, which we don't have here because, again, we have a plea. And that's enough. And everything else the petitioner raised with respect to particular seriousness is outside of the court's review because it's just a matter of weighing the factors. All of this, we think, is on all fours with Gutierrez Vargas. That being so, the particular serious crime did for her asylum claim and her withholding claim. She did have a cat claim. Our position there is that she waived it. She hasn't challenged the merits of it at all. She made an evidentiary claim about how she wishes she had been able to file some videos, but she's never described what they are. These videos are a mystery, perhaps even to her. I have an argument on this, but I just want to point out something. I cited this in my brief, but I didn't highlight it. If you look on page 692, that is the index of evidence that was in the USB drive, which she managed to print out. And you can see that it doesn't appear that there are actually any media files on the drive. These are links to YouTube videos, Google videos, Bing videos. These are URL websites. You can print them out on a piece of paper and turn them in. She didn't do that. She was given myriad opportunities to do so and didn't. I think with that, I'll leave it there. So again, petitioner committed a fraud. It was more than enough fraud to be aggravated felony. It was a serious fraud. She has no other avenues to relief. So we would ask that the court dismiss in part and deny in part the petition for review. Thank you. Thank you. Mr. Hoppe, you have three and a half minutes. Your mic is not on, sir. My apologies again. If I can start again with the loss amount. I mean, I think the court is correct that Nijuan is a clear case, but it contains nuance. And it's nuance that I think the Department of Justice wishes weren't in there. The decision doesn't just say that the court can use a circumstance-specific approach. It also says that the loss amount must be tied to the convicted counts, and it can't be tied to acquitted or dismissed counts. Here you have 36 dismissed counts, and the immigration judge concluded that Ms. Roberts was guilty of all of it and that that entire loss amount was the basis for his determination, not just that she was deportable, but also that her crime was particularly serious because of the scale of the supposed loss. I think the court is right that Allaka in the Third Circuit is on all fours with this case. Allaka also precedes Nijuan, and the court in Nijuan cited Allaka in part for its analysis. And then the attorney general's reference to Doe versus the attorney general is the opposite because there the defendant was convicted of aiding and abetting the entire scheme, and here Ms. Roberts wasn't. So what you have is a loss amount that is stipulated in her mother's plea agreement at page 19 of the record under the heading loss amount, and Ms. Roberts' plea agreement doesn't have a heading that says loss amount. It doesn't have a stipulation. It doesn't have a 12-point enhancement for a loss exceeding $250,000. All the things from her mother's case are missing in hers. On the particularly serious crime, the attorney general is wrong about jurisdiction. The court certainly has jurisdiction to review whether the agency has complied with its own legal standard. One of the factors its own cases require the agency to consider is sentence length. So as we've outlined in our brief, the length of the sentence absolutely has to be considered by the immigration judge. Here Chantel received the minimum possible statutory sentence. The immigration judge didn't mention it at all, and the board on review said the immigration judge had correctly considered her sentence length. That's an error by the board because the immigration judge didn't mention the sentence length, and to the extent that the agency applies the wrong legal standard, that is a legal error. It's not just a quibbling with weighing factors. Another factor that the agency and this court have said is mandatory in the JAMA case is whether the crime is a crime against property or a crime against people. There's no dispute that this is a property crime, and yet the agency's cases and this court's cases have said crimes against property are more likely to be not particularly serious. Again, the attorney general doesn't have a meaningful answer, and beyond this argument about jurisdiction, which is just not accurate, there's no good reason why the board or the immigration judge didn't consider that factor. So just in terms of applying the agency's standard, we would ask the court to find that the particularly serious crime determination as a legal matter is insufficient, and that remand to the board would be helpful. I'm not certain how much time I have left because— Twenty seconds. Okay, I'll just say a thing about the thumb drive. The record is rather clear that she submitted a USB drive. It's also important to note, and not just a printout of an index or links to YouTube, it was a USB drive with videos on it. It's also important to note she was in a jail in federal custody during the height of the pandemic, where it was locked down, she couldn't get additional things filed, and again, the agency pulled the rug out from under her. At her final hearing, she was told she wasn't allowed not just to refile that evidence in any other format, but not even to make an offer of proof, which is also in my brief. So the argument that she's waived it or that she didn't describe the videos in enough specificity, she specifically tried to, and the judge wouldn't let her, there's no rule that says you can't submit video evidence in immigration court, and as much as the board and the immigration judge claimed there was such a rule, that's a legal error. We would ask the court to reverse on it. Your time has expired. Thank you. Mr. Hoppeck, Mr. Schuchard, we appreciate your arguments very much, and the case is submitted.